**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMASA MACHEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:12-cv-01724-TFM** |
| | ) | |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.    Introduction

Plaintiff, Thomasa Machen, brought this action pursuant to 42 U.S.C. §§ 504(g) and

1383(c), for judicial review of the final determination of the Commissioner of Social Security

("Commissioner") which denied her application for supplemental security income ("SSI") under

Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f).

### II.    Background

#### A.    Facts

Plaintiff was born on July 30, 1958, and achieved a high school education having

graduated in 1977.  (R. 31-32, 137).  Beginning in 1995, she worked periodically as a fulltime

restaurant cashier.  (R. 127, 137).  Plaintiff worked in that capacity until 1997, when her

employment ended because her employer was "not giving [her] enough hours."  (R. 136).

Plaintiff alleges having become disabled as of January 1, 1998, mainly due to scoliosis,

arthritis, and swollen feet.  (R. 32).  The record evidence reflects that she has not engaged in

substantial gainful work activity since having alleged disability in January 1998.  (R. 127, 137).

---

[1] Ms. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  She is automatically substituted as the named defendant in this suit in place of Michael J. Astrue, who previously served as commissioner.  *See* Fed. R. Civ. P. 25(d).

The medical evidence suggests that Plaintiff's impairments include systolic dysfunction, degenerative changes to the first toe, calcaneal spur of the left foot, dextroscoliosis and diffuse discogenic disease of the thoracic spice, dextroscoliosis and arthritis of the lumbar spine, obesity, arthralgias, and depression. (R. 14.) Plaintiff also reports severe headaches and alleges that her arthritis was prompted by a Harrington implant, a stainless steel rod that was surgically inserted in Plaintiff's back as a teen in treatment of her scoliosis. (R. 32, 36, 42-43, 182).

On June 8, 2010, Plaintiff visited her primary care physician, Dr. Thor Mathos, for a routine physical which was required for her welfare benefits application. (R. 32-33, 200). During that physical, Plaintiff reported that she was taking over-the-counter pain medication for arthritis pain in her back and knees. (R. 200). Dr. Mathos observed that Plaintiff was obese but that she retained full range of motion in both knees. (R. 200). From that appointment, a physician assistant at Dr. Mathos' office completed a state welfare report which indicated that Plaintiff's arthritis caused her to be "temporarily disabled" between then and September 8, 2010.[2] (R. 213).

On the advice of Dr. Mathos, Plaintiff underwent radiographs ("x-rays") at Excela Health Westmoreland Hospital on July 6, 2010. (R. 195-197). The x-rays of Plaintiff's spine revealed scoliosis, the Harrington rod, and diffuse degeneration, but did not reveal any disc space narrowing, compression deformities, or spondylolisthesis. (R. 195, 197). Additional x-rays of Plaintiff's "knees demonstrate[d] no osseous, soft or articular abnormalities." (R. 196). Plaintiff was ultimately diagnosed with lower extremity edema on August 31, 2010 after having reported swelling in her feet. (R. 202). Roughly ten months later, Dr. Mathos determined that Plaintiff

---

[2] According to the Pennsylvania Department of Public Welfare's ("DPW") employment assessment form, a temporarily disabled patient "is currently disabled due to a temporary condition as a result of an injury or an acute condition and the disability *temporarily* precludes any gainful employment." (R. 213) (emphasis in original). To meet the temporal element, an individual's disability must not last for more than twelve months. (R. 213).

was "permanently disabled" due to arthritis and scoliosis.[3]  (R. 211).

Plaintiff was again x-rayed on August 6, 2010, which revealed a left foot calcaneal spur and degenerative joint disease in her first toe.  (R. 194).  The x-rays also reflected no fracture and the bones were well mineralized.  (R. 194).

On August 9, 2011, Plaintiff underwent a psychological evaluation by Dr. Lindsey Groves.  (R. 216-226).  During that evaluation, Plaintiff disclosed that she lost her companion of 22 years approximately one year earlier and admitted that she felt depressed.  (R. 216). According to a mental impairment questionnaire, Plaintiff's symptoms included forgetfulness; sleep disturbance; mood disturbance; anhedonia or pervasive loss of interest; psychomotor retardation; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; blunt, flat, or inappropriate affect; and decreased energy.  (R. 219).

Dr. Groves ultimately diagnosed Plaintiff with having a moderate single episode of major depressive disorder.  (R. 216).  Dr. Groves also assessed Plaintiff with having a seventy percent (70%) permanent mental health disability and stated that she was unable to work at that time. (R. 218).  Likewise, in her clinical notes, Dr. Groves evaluated Plaintiff's Global Assessment of Functioning ("GAF") score at 55.[4]  (R. 219).  Relevant to her findings, Dr. Groves also analyzed many of Plaintiff's abilities.

Regarding Plaintiff's functional job limitations, Dr. Groves reported that Plaintiff had "marked" difficulties in maintaining social functioning, "moderate" restrictions of daily living

---

[3] A permanently disabled patient, according to the employment assessment of DPW, "has a physical or mental condition which permanently precludes any gainful employment.  The patient is a candidate for Social Security Disability or SSI."  (R. 211).  Notably, the United States Court of Appeals for the Third Circuit has recognized, however, that "a check-list form concerning employability for [DPW]" is not solely determinative of a claimant's disability status.  *Griffin v. Comm'r Soc. Sec.*, 305 F. App'x 886, 890-91 (3d Cir. 2009) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

[4] A GAF score is intended to rate a patient's current general overall functioning.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual* (4th ed. 2000).  A score between 51 and 60 indicates moderate difficulty in social or occupational functioning.  *Id.* at 34.

activities, and "moderate" difficulties in maintaining concentration, persistence, or pace. (R. 222). Dr. Groves also noted that Plaintiff had one or two lengthy episodes of decompensation. (R. 222).

Regarding Plaintiff's ability to make occupational adjustments, Dr. Groves opined that Plaintiff's ability to follow rules, relate to coworkers, interact with supervisors, and maintain attention/concentration were "good." (R. 224). Dr. Groves also found that Plaintiff's ability to deal with the public, deal with work stress, and function independently were "fair." (R. 224). In Dr. Groves' opinion, however, Plaintiff "lacks judgment and insight into how her depression affects her functioning and her need for treatment." (R. 224).

In discerning Plaintiff's ability to make performance adjustments, Dr. Groves noted that her ability to follow simple job instructions was "good." (R. 225). Dr. Groves also found that Plaintiff's ability to perform detailed but not complex job instructions was "fair." (R. 225). Nonetheless, Dr. Groves noted that Plaintiff had poor to no ability to understand, remember, or carry out complex job instructions. (R. 225).

Finally, with regard to Plaintiff's ability to adjust personally and socially, Dr. Groves opined that her ability to maintain her personal appearance and demonstrate reliability was "good." (R. 225). Additionally, Dr. Groves opined that Plaintiff's abilities to behave in an emotionally stable manner and relate predictably in social situations were "fair." (R. 225). In the evaluation, Dr. Groves stated that Plaintiff "cannot handle more than one task at a time . . . ." (R. 225). Dr. Groves also opined that Plaintiff's overall condition "would likely improve if she sought appropriate counseling and medication management." (R. 217).

### B.   **Procedural History**

Plaintiff initially filed an application for SSI on August 6, 2010 in which she claimed total disability since July 30, 1974.  (R. 12).  A hearing was conducted on September 26, 2011 before Administrative Law Judge ("ALJ") Marty R. Pillion.  (R. 12).  Plaintiff was represented by counsel and testified at the hearing.  (R. 12).  Irene H. Montgomery, a vocational expert ("VE"), also testified at the hearing.  (R. 12).

During said hearing, Plaintiff testified to her various alleged ailments.  Plaintiff first claimed that she was recently hospitalized for three days due to swollen feet and that doctors prescribed medication for that condition.  (R. 33).  Moreover, Plaintiff testified that the medication was effective in treating her symptoms and reported no side effects.  (R. 33-34).  Plaintiff described "real bad headaches" that "last all day" unless she does not take an over-the-counter painkiller.  (R. 36-37).  She also indicated having experienced pain in her back, ankles, elbows, and shoulders every day, which occasionally worsened during weather changes.  (R. 36-37).  As a result of these symptoms, Plaintiff claimed that she cannot "sit any longer than 15 [to] 20 minutes or stand any longer than 15 [to] 20 minutes."  (R. 37).  While Plaintiff specified that she had not received therapy or undergone surgery regarding her feet or other symptoms, she reported voluntary use of an assistive walking device in "special cases."  (R. 34-35).

At the hearing, Plaintiff also testified to other aspects of her daily life.  She described her daily activities to include reading, using the computer, watching television, cooking, cleaning, grocery shopping, and occasional visits to the mall, restaurants, or the movie theater.  (R. 40-24).  Plaintiff has never had a driver's license.  (R. 31-32).  She stated that she does not smoke, consume alcohol, or use recreational drugs.  (R. 36).

On October 25, 2011, the ALJ rendered a decision which was unfavorable to Plaintiff, in

which he found that Plaintiff retained the ability to perform a wide range of light exertional activity and, therefore, was not "disabled" within the meaning of the Act. (R. 9-22). The decision of the ALJ became the final decision of the Commissioner on October 5, 2012 when the Appeals Council denied Plaintiff's request to review the October 25, 2011 decision of the ALJ. (R. 1-3).

On November 28, 2012, Plaintiff filed her complaint in this Court in which she seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred: (1) in failing to evaluate the effects of obesity on Plaintiff's musculoskeletal impairments; (2) in making an adverse credibility finding; (3) in not resolving a conflict between the VE's testimony and the *Dictionary of Occupational Titles*;[5] (4) by rejecting the opinions of Plaintiff's treating physician; and (5) in assessing Plaintiff's residual functional capacity ("RFC") without a proper basis. Plaintiff further contends that the ALJ's decision was not based on substantial evidence.

The Commissioner disagrees. Although the Commissioner frames the issues in a slightly different manner, the essence of the Commissioner's position is that the decision of the ALJ should be affirmed as it is supported by substantial evidence.

For the reasons that follow, the Court agrees with the Commissioner. Accordingly, the Court will grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

---

[5] The *Dictionary of Occupational Titles* is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy . . . ." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). The Court notes that "[t]he Social Security Administration has taken administrative notice of the reliability of the job information contained in the *Dictionary of Occupational Titles* . . . ." *Id.* at 126 (citing 20 C.F.R. § 416.966(d)).

### III. Legal Analysis

#### A. <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C.A. § 405(g); 42 U.S.C.A. § 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C.A. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (citation omitted).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002) (stating "[t]his test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520"); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II (DBI) standard, and those implementing the Title XVI (SSI) standard are the same in all relevant aspects); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d Cir. 2000) (stating claimant's burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant

(1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 20 C.F.R. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C.A. § 423(d)(1). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C.A. § 423(d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and

work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d at 119.

When a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for listed impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a listed impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); 42 U.S.C.A. § 423(d)(2)(C) (stating that "in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In step one of the process, the ALJ concluded that Plaintiff had not engaged in substantial gainful work since August 6, 2010, the application date. (R. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: "suggested systolic dysfunction, degenerative changes to left first toe, calcaneal spur left foot, dextroscoliosis and diffuse discogenic disease of the thoracic spine, dextroscoliosis and arthritis of the lumbar spine, obesity, arthralgias, and major depressive disorder . . . ." (R. 14). At step three, the ALJ found that Plaintiff's impairments did not individually or collectively meet or medically equal a listed impairment. (R. 14). At step four, the ALJ concluded that Plaintiff "has no past relevant work . . . ." (R. 21). And, at step five, the ALJ determined that Plaintiff had an RFC to perform a limited range of light work and that jobs exist in significant numbers in the national economy which Plaintiff could perform. (R. 17, 21). Thus, the ALJ

determined that Plaintiff was not disabled within the meaning of the Act. (R. 22).

**B.**    **Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or reweigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Instead, the Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C.A. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

> 1.    *The ALJ's decision is supported by substantial evidence, as he sufficiently evaluated the effects of Plaintiff's obesity on her musculoskeletal impairments.*

Plaintiff argues that the ALJ's analysis of her impairments at step three was insufficient under 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1 ("the listings"). The Court, however, finds that the decision of the ALJ is adequately supported by the evidence and that he effectively analyzed the totality of Plaintiff's mental and physical impairments consistent with the listings.

Provided that steps one and two of the sequential evaluation process are satisfied, step three allows the social security disability claimant to automatically qualify for benefits by providing medical evidence that the claimant is disabled per se because he or she suffers from one or more impairments set forth in the listings. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Specifically, the listings describe impairments "severe enough to prevent a person from doing any gainful activity . . . ." 20 C.F.R. § 416.925. When a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify as a listed impairment, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a listed impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir.

2009); 42 U.S.C.A. § 423(d)(2)(C).

The medical criteria essential to proving any listed impairment are formidably high.  *See Sullivan*, 493 U.S. at 532.  In *Sullivan*, the United States Supreme Court emphasized that "the listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing ***any*** gainful activity, not just 'substantial gainful activity.'"  *Id.* (emphasis added).  Thus, a claimant may not receive benefits if the severity of his/her total impairments is less than that of any single impairment described in the listings.  *Id.  Accord Anderson v. Apfel*, 996 F. Supp. 869, 872 (E.D. Ark. 1998) (stating that an impairment that manifests only some of a listing's medical criteria, no matter how severely, does not qualify a claim).

When deciding whether an individual is disabled at step three, the United States Court of Appeals for the Third Circuit has determined "that an ALJ must clearly set forth the reasons for his decision."  *Diaz*, 577 F.3d at 504 (citing *Burnett*, 220 F.3d at 119).  Nonetheless, the common law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis."  *Jones*, 364 F.3d at 505.  As such, it is not necessary for the ALJ to use any specific 'magic words' in his written opinion.  *Diaz*, 577 F.3d at 504.  Should the claimant suffer from a listed impairment or its equivalent, the analysis of the ALJ need not go further. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Here, Plaintiff asserts that the ALJ erred at step three by failing to evaluate the effect of Plaintiff's obesity on her musculoskeletal impairments under Listing 1.04, which specifies the objective medical criteria required to demonstrate disability attributable to spinal disorders.[6] Importantly, SSR 00-3P provides that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a

---

[6] The ALJ noted that the height of Plaintiff is 62 to 62.5 inches with her weight ranging from 203 to 213 pounds.

listing.  This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."  SSR 00-3P.

Nevertheless, the ALJ has explained that "the progress notes and reports from treating and examining medical sources do not contain any references to problems or exacerbations of any body system as a result of obesity."  (R. 18).  Plaintiff has failed to present any record evidence suggesting that her obesity, in conjunction with other impairments, equates to Listing 1.04.[7]  The ALJ, therefore, considered the effects of Plaintiff's obesity on her physicality and provided adequate reasoning in accordance with SSR 00-3P in determining that Plaintiff's obesity did not have a significant impact on her other impairments.

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence. All indications support the conclusion that the ALJ conducted a comprehensive review of Plaintiff's medical records in making his determination, and his written decision certainly allows this Court to adequately review his ruling.  Therefore, this Court finds that the ALJ provided sufficient explanation for his conclusion at step three that Plaintiff's impairments did not meet or

---

[7] According to Listing 1.04:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1.

equal the severity requisite to a listing.

    2.    *The decision of the ALJ is supported by substantial evidence, as he considered the relevant evidence before having determined Plaintiff's RFC.*

Beyond step three, if a claimant does not suffer from a listed impairment or its equivalent, he or she must demonstrate at step four the existence of a medically determinable disability that precludes a plaintiff from returning to his or her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it has been established that a claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove at step five that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d at 119.

In this case, the ALJ found that Plaintiff has no past relevant work at step four. At step five, the ALJ determined that Plaintiff has the RFC to perform light work with some exceptions: she is "limited to standing up to four hours in an eight hour day and must be afforded the option to sit for one half hour after every one half hour of standing, and [is] limited to simple, routine tasks with few changes." (R. 17).

Plaintiff argues that the ALJ erred at step five in having determined Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ failed to evaluate the effects of Plaintiff's obesity on her musculoskeletal impairments at step five. Plaintiff also asserts that the ALJ's RFC assessment is not based upon substantial evidence. The Court disagrees with both assertions, finding that the ALJ properly evaluated the effects of Plaintiff's obesity and that the ALJ's decision is supported by substantial evidence.

"[RFC] is defined as that which an individual is still able to do despite the limitations

caused by his or her impairment(s)." *Burnett,* 220 F.3d at 121 (quoting *Hartranft v. Apfel,* 181 F.3d 358, 359 n.1 (3d Cir. 1999)) (internal quotation marks omitted).  A claimant's RFC represents the most, not the least, which a person can do despite his or her limitations.  *See Cooper v. Barnhart,* 2008 WL 2433194, at *2 n.4 (E.D. Pa. June 12, 2008) (citing 20 C.F.R. § 416.945(a)).  In determining an individual's RFC, an ALJ must consider all the evidence of record.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  Although an ALJ must weigh the credibility of the evidence when making an RFC determination, he or she must give some indication of the evidence which is rejected and the reasons for doing so.  *Id.*  As the court stated in *Burnett,* "[i]n the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  *Id.* at 121 (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)) (internal quotation marks omitted).  Of significance in this case, an ALJ must consider the effects of obesity when evaluating RFC and take into account that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02-1P.

Although record medical evidence reflects that Plaintiff suffers from multiple impairments, the evidence also indicates that those impairments do not definitively prevent her from doing light exertional activity.  In determining Plaintiff's functional capacity, the ALJ properly reviewed the evidence and indicated his reasons for weighing each accordingly.  The ALJ stated that, despite Plaintiff's physical ailments, the evidence indicates that Plaintiff still has the ability to conduct daily activities such as sweeping, vacuuming, grocery shopping, and using a computer.  (R. 19).  Specific to the effects of Plaintiff's obesity, the ALJ "considered the claimant's obesity in accordance with SSR 02-01 and has determined it does not have a significant impact on her body systems or that it significantly affects her ability with ambulation,

14

mobility or manipulation." (R. 18). The ALJ also considered Plaintiff's reported symptoms of pain, which the evidence reflects were not debilitating. (R. 19-20).

Further, the ALJ adequately considered the entirety of Plaintiff's record medical evidence in relation to her mental condition. In detail, the ALJ cited the opinions of Dr. Groves and weighed her estimations accordingly. (R. 20). The ALJ noted that, while evidence indicates that Plaintiff suffers from a major depressive disorder, Dr. Groves stated that Plaintiff "was still mourning the loss of her companion, and would likely improve if she sought appropriate counseling and medication management . . . ." (R. 16). The ALJ likewise acknowledged that Plaintiff had not received outpatient counseling, emergency room care, or inpatient mental health treatment. (R. 16).

From his analysis, it appears that the ALJ considered the relevant and pertinent facts in determining Plaintiff's RFC and recited a reasonable basis for his decision. As such, the ALJ properly evaluated Plaintiff's ability to perform substantial gainful employment given her age, education, and work experience. The Court finds that substantial evidence supports the ALJ's determination at step five.

3. *The ALJ's decision is supported by substantial evidence, as he provided an adequate explanation in his conclusion related to Plaintiff's credibility.*

Plaintiff next argues that the ALJ erred in making credibility findings according to SSR 96-7P without an adequate explanation. Initially, Plaintiff claims that the ALJ did not adequately explain his credibility finding that Plaintiff's treatment history is inconsistent with an individual who has allegedly experienced totally debilitating symptomology. Second, Plaintiff asserts that the ALJ erroneously downplayed Plaintiff's earnings record, indicating that her inconsistent and sparse work history does not enhance the credibility of the subjective allegations. Yet, the Court concludes that the ALJ made these deductions in accordance with SSR 96-7P.

To determine the credibility of a claimant, an ALJ must assess the believability of that individual's statements pursuant to SSR 96-7P, which states:

> [S]tatements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7P. Furthermore, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *Id.* The United States Court of Appeals for the Third Circuit has emphasized this standard. *See Schaudeck*, 181 F.3d at 433. It is not enough that the record contain sufficient evidence to support the ALJ's conclusion under some hypothetical rationale; rather, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *see also Fargnoli*, 247 F.3d at 44 n.7 (stating that "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based").

Contrary to Plaintiffs first assertion that the ALJ did not adequately explain his credibility finding that Plaintiff's treatment history is inconsistent with an individual having experienced total debilitating symptomology, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints. The ALJ first considered "the entire case record," pointing to Plaintiff's impairments. (R. 18). Then, the ALJ cited the clinical and objective findings contradictory to Plaintiff's alleged disability. Specifically, the ALJ noted that Plaintiff did not require ongoing treatment, therapy, or surgical intervention. (R. 19). The ALJ also considered Plaintiff's reported symptoms of pain, which the evidence shows were not debilitating. (R. 19-20). While a claimant need not be in a vegetative state to be disabled, the ALJ also explained that Plaintiff's

daily living activities indicated inconsistency with an individual experiencing totally debilitating symptomology. (R. 19).

Additionally, Plaintiff's contention that the ALJ erroneously downplayed Plaintiff's earnings record must fail because such finding was grounded upon evidence and the ALJ adequately explained same. In determining the credibility of a claimant, an ALJ may evaluate, among other factors, the claimant's "prior work record and efforts to work . . . ." SSR 96-7P. Here, the ALJ referenced Plaintiff's earnings record relating to her sparse work history between 1995 and 1997, all of which preexisted Plaintiff's alleged disability. (R. 20). The ALJ also explained that "the earnings records in this case simply do not paint the picture of an individual with a strong motivation to work." (R. 20). The earnings record reasonably support the ALJ's conclusion.

Thus, it is apparent that the ALJ's decision concerning Plaintiff's credibility was based on substantial evidence. Likewise, the ALJ provided a sufficiently detailed analysis to explain his decision. Accordingly, this Court finds that the ALJ did not err by making an adverse credibility finding without an adequate explanation.

4.      *The ALJ's decision is supported by substantial evidence, as he inquired about a conflict existing between the VE's testimony and the DOT and obtained an explanation for that conflict.*

Plaintiff contends that the ALJ erred at step five by failing to reconcile a purported conflict between the VE's testimony and the descriptions in the *Dictionary of Occupational Titles* ("DOT") regarding the jobs the VE identified as those which Plaintiff could perform. In his RFC determination, the ALJ found that Plaintiff was limited to employment consisting of "simple, routine tasks with few changes." (R. 17). The ALJ posed a hypothetical to the VE based on his RFC assessment, which reduced standing and walking to four hours and included a sit/stand option. (R. 45). Responding to that hypothetical, the VE testified that an individual

with Plaintiff's limitations would be able to perform the requirement of representative occupations, such as "weigher scales operator" and "inspector of plastic parts." (R. 22). Thus, the ALJ, relying on the VE's testimony, found that jobs exist in significant numbers in the national economy that Plaintiff could perform. (R. 22).

Plaintiff argues that, in the DOT, simple jobs require a specific vocational preparation ("SVP") level of 1. As such, they do not comport with the VE's testimony that Plaintiff could make adjustments to simple light jobs with an SVP level of 2. Plaintiff contends that, under SSR 00-4P, the ALJ had a duty to resolve this conflict and that his alleged failure to do so renders his finding at step five devoid of substantial evidence. The Court is not persuaded by Plaintiff's argument.

The United States Court of Appeals for the Third Circuit has interpreted SSR 00-4P as requiring an ALJ to "ask the [VE] whether any possible conflict exists between the [VE]'s testimony and the DOT," and if a conflict does appear to exist, "to elicit a reasonable explanation for the apparent conflict." *Burns*, 312 F.3d at 127. Here, the ALJ specifically asked the VE whether the testimony she provided as to the jobs Plaintiff could perform was consistent with the DOT's description of those jobs, which the VE affirmed. (R. 46). The ALJ asked whether the sit/stand option from his hypothetical is in the DOT, to which the response was in the negative. (R. 46). The ALJ inquired of the basis of the VE's opinion that one with Plaintiff's limitations could perform the stated jobs with that particular restriction. (R. 46). The VE responded that her opinion was "[b]ased on professional training and work experience . . . ." (R. 46). Thereafter, the ALJ stated that "[p]ursuant to SSR 00-4[P] . . . the [VE]'s testimony is consistent with the information contained in the [DOT]." (R. 22).

It appears to the Court that the ALJ complied with SSR 00-4P and his finding at step five

does not require a remand.

5. *The ALJ's decision is supported by substantial evidence, as he did not violate the "treating physician rule."*

Plaintiff next argues that the ALJ erred by rejecting the opinions of Dr. Mathos. Being bound by the "treating physician rule," Plaintiff contends that Dr. Mathos' opinions deserved considerable weight in the ALJ's analysis. However, this Court concludes that the ALJ did not violate the treating physician rule by giving the opinions of Dr. Mathos "only limited weight." (R. 20).

While it is true that "[u]nder applicable regulations and the law of this circuit, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," *Fargnoli,* 247 F.3d at 43 (citing 20 C.F.R. § 404.1527(d)(2) and 20 C.F.R. § 416.927(d)(2)), an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer,* 486 F.3d at 429 (citing *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir. 1985)). To be sure, the ultimate determination of disability—which is a legal determination—is exclusively reserved for the Commissioner and not a medical source. *See* 20 C.F.R. § 404.1527(e) and 20 C.F.R. § 416.927(e).

For instance, an ALJ may reject the opinion of a physician if it is contrary to other medical evidence in the record, *see, e.g., Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988), or if it is insufficiently supported by clinical data, *see, e.g., Newhouse,* 753 F.2d at 286. Of particular relevance, an ALJ may reject the view of a treating physician if it is in the form of an unsupported, conclusory opinion. *See, e.g., Jones v. Sullivan,* 954 F.2d 405, 408 (3d Cir. 1991); *see also Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence [of actual disability] at best"). Nonetheless, when an ALJ rejects the opinion of a treating physician

on the basis of contradictory medical evidence, he must give a reason why such evidence has been rejected. *See Cotter,* 642 F.2d at 706; *see, e.g., Kennedy v. Richardson,* 454 F.2d 376 (3d Cir. 1972); *see also Morales,* 225 F.3d at 317 (stating that an ALJ cannot make "'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence,' and not due to his or her own credibility judgments, speculation or lay opinion") (citing *Plummer,* 186 F.3d at 429; *Frankenfield,* 861 F.2d at 408; *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983)).

Rather than outright rejection, an ALJ may also afford an opinion less than controlling weight if it does not present relevant evidence or a sufficient explanation to support an opinion or if it is inconsistent with the record as a whole. *See* SSR 96-2P. When an ALJ denies a claim where a treating physician's opinion is not controlling, his "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Here, Dr. Mathos opined that Plaintiff was "permanently disabled" on a two-page state welfare application. (R. 211). Dr. Mathos provided a conclusory statement of Plaintiff's diagnoses (arthritis and dextroscoliosis of the lumbar spine), but he did not explain the determination of those diagnoses. (R. 211). Without an adequate explanation, Dr. Mathos' opinion as to Plaintiffs' employability is not sufficient as a determination of disability. Thus, the ALJ was justified in rejecting this opinion.

The ALJ was also justified in giving little weight to Dr. Mathos' medical opinion because there is substantial evidence to the contrary of Dr. Mathos' conclusions. When looking to the

record as a whole, the ALJ found other evidence indicating that Plaintiff does not suffer from totally debilitating symptoms. For example, the ALJ recognized that Plaintiff did not have problems with personal care and noted that her daily activities included occasional recreational visits to the mall, restaurants, or the movie theater. (R. 21). The ALJ stated that these activities indicate that Plaintiff can perform occupational work on a consistent basis. (R. 21). The ALJ reasonably explained and considered these discrepancies in light of Dr. Mathos' opinion and, thus, was justified in giving it little weight.

In sum, the ALJ did not violate the "treating physician rule" by giving only limited weight to the opinion of Dr. Mathos because other substantial evidence was contradictory to Dr. Mathos' conclusion that Plaintiff was permanently disabled.

## IV.   Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Act and that she is able to perform a wide range of work at light exertional levels.

For these reasons, the Court will grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMASA MACHEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:12-cv-01724-TFM** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER OF COURT**

 **AND NOW,** this 20th day of June, 2013, in accordance with the foregoing Memorandum

Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that: Plaintiff's MOTION

FOR SUMMARY JUDGMENT (ECF No. 9) is **DENIED;** and that Defendant's MOTION FOR

SUMMARY JUDGMENT (ECF No. 11) is **GRANTED**.  The Clerk shall docket this case

closed.


     BY THE COURT:

     s/Terrence F. McVerry_____
     United States District Court Judge


cc:  E. David Harr, Esq.
    david@edavidharr.com

    Christy Wiegand, Assistant U.S. Attorney
    christy.wiegand@usdoj.gov